Please call the next case. Good morning, Your Honors. My name is Maria Harrigan, State Appellate Defender. I represent Mr. Rush in this case. This morning I will briefly address the first issue raised in my brief, that Ginger Altman's testimony from the first trial should have been wholly excluded on retrial. And then I will move on to Issue 3, that if the Court determines that the testimony was admissible, defense counsel should have been given a wider berth to impeach her credibility. Ginger Altman's testimony from Mr. Rush's first trial should have been not admitted under 115-10.4 because it did not have the requisite, equivalent, circumstantial guarantees of trustworthiness that's required by that statute. And why is that? Why was it not, in your estimation, trustworthy? Ms. Altman had, the number one reason is she had serious psychiatric issues, which seems to spike at critical times in this proceeding. Didn't she have those psychiatric issues at the time of her earlier testimony? Yes, she had those issues at the time of her testimony. The other component of this is Doesn't that end the matter before us? Why do you think we should look at that very same issue once again when during the first trial her competency was addressed and she was found to be confident? Well, first of all, I'm not talking about competence. I'm talking about credibility, which are two different questions. Where is there any authority that says credibility is something that a court of review should focus on? The prong of 10.4 that talks about the equivalent circumstantial guarantees of trustworthiness of the testimony, the unique factor in this case has to do with this particular witness. She was, by all admission, by all parties at the first trial, had an extremely odd demeanor. The state even wanted her competence tested at the first trial. The state is the one that asked for the competency hearing at the first trial. So my point is that once that competency was addressed in the first trial and she was found to be competent, why do you think there should be a second review of, under different grounds if you insist, to challenge the admissibility of her testimony at the second trial? Because this jury didn't see her. That's always the case, isn't it? Yes, it is. But it's also, it is a factor in the Smith case that they talk about, there's some reference in the Meltzer case and the Smith case that live testimony is different than the admission of a transcript. It's always different. Yes, it is. So why should that make a difference in this case? Ms. Altman had, again, admittedly, an extremely odd demeanor which was discussed repeatedly at the first trial and even by the reviewing court in the appeal on the first trial. And it factored greatly into the way she testified and, again, she was the critical eyewitness, the only eyewitness that the state presented at the case. So we do request that the testimony be excluded. However, if your honors do not believe that the testimony should have been excluded, Mr. Rush still deserves a new trial because his defense attorney was unduly restricted in how he could impeach her credibility. And, again, this also goes to her demeanor because this jury did not see her. I find that argument so curious because if the first jury saw her demeanor, saw that she was impaired psychiatrically, you know, were able to hear her testimony and still made a determination against your client, and the second jury doesn't have to see, you know, I mean, is not actually looking at the demeanor of the witness but just hearing the testimony, why would, you know, the impact of that testimony not be less than the impact of what I saw or impacted by virtue of the fact that the individual herself is not there? It would seem that it would be, you know, more difficult with her being there than with her out for your client to make his case. The problem with that is the issue on the first trial, which my client prevailed on, was that there was extensive testimony in front of the jury bolstering her credibility. Dr. Pan, the trial judge, called Ms. Altman's mother to the stand on his own to discuss with her the medications Ginger was taking and how she was, what her behavior was like, and then he allowed the state to present the testimony of a doctor who had interviewed her and testified at a competency hearing, who told the jury that she was competent to testify and she knew the difference between a truth and a lie. All the questions that you would ask at a competency hearing, that is not supposed to be held in front of the jury. So that jury got an expert's opinion that bolstered her credibility. This jury, in front of this jury, her credibility was bolstered by the fact that her testimony was read by somebody without these mental issues and without this odd demeanor. Somebody who was presumably dressed like I am, a female assistant state's attorney, who cold read the transcript with somebody else playing the state's attorney's role in front of this jury. So that is how her, and on top of that, the trial judge recluded defense counsel from bringing in evidence to impeach her credibility, such as the most important thing is that although they allowed testimony about the name of her psychiatric diagnosis, when the doctor started to explain what that meant and how that would affect her, the judge sustained the state's objection and struck the one thing he said from the record. But the term schizoaffective disorder wouldn't mean anything to a lay jury, which is why we have the entire body of law about expert testimony. What do you think about her testimony that would have been different based on a different view of her psychiatric condition? Do you think her psychiatric condition caused her to place Mr. Rush at the scene when he really wasn't there? I'm not sure. The point is this jury should have... Do you think she hallucinated and saw events between Mr. Rush and the victim that really didn't occur? Well, one of the symptoms of her illness when she was off medication was delusions. So you think she had delusions and testified to those delusions? I think the jury is entitled to hear what her mental disorder was to make that judgment themselves. But she also helped Mr. Rush, didn't she? I mean, she talked about how the victim held Mr. Rush under water for three to five seconds. Yes, she did. She also, the most damaging testimony came out in her pretrial statement, which was a lot of substantive evidence in her testimony. And the defense attorney wanted to bring out information that right after that pretrial statement she had a complete breakdown. She was completely off her medication for the 12 hours during that day and she was completely disassociated and talking to herself the day afterwards. That was also not allowed in. And he also would not allow any testimony about the circumstances of her death, which happened shortly after she testified and was directly tied to her illness and is indicative of the fact that she was on a downward spiral since the day she testified. The defense attorney presented evidence at a pretrial hearing that when the parents had to call the police because she was screaming and crying and crawling on the floor and she died from a reaction to a very powerful tranquilizer given to people who are in severe psychosis. And all these, especially because the jury didn't get to see her, the defense attorney shouldn't have been given wide berth to be able to impeach her credibility because of the way this testimony was presented. So let's say there was a remand. How do you want this to be handled? What's the fix? Well, depending on Someone who portrays herself as being psychotic, reading the transcript? It would depend on which issue. I mean, the issue one, we wouldn't have her testimony at all. If it was issue three, then I would say at least the defense attorney should be allowed to impeach her to bring all this stuff up about her condition. And again, it seemed like when the trial judge was ruling on this, he felt hamstrung by the appellate court's decision in the first case, which restricted Dr. Pan's testimony. But that stuff went to confidence. This went to credibility. And the state would have been allowed to bring up other things to maybe rebut what the defense brought up. Defense is always entitled to present any evidence they choose to present. And if Dr. Pan would have helped the matters? But it seemed like the judge was thinking that if he let this in, then he would have to let Dr. Pan testify for the state. And those are just two separate things that would not have been the case. So it seems like the judge felt he could let some of it in, but he couldn't let all of it in, because then we'd be in the same place we were before. And I'm just pointing out that I don't think that's the case here. Again, the witness the jury saw was not the witness that testified here. So, and the error harmed Mr. Rush. I mean, the most damaging testimony came from her. What about the fishing poles at the house? Again, the fishing poles at the house were introduced at the first trial, and the reviewing court found that that was not harmless. That the evidence was closely balanced and remanded it. So again, we have virtually the same evidence here. And another way of bolstering her credibility, just like in the first trial, was also bolstered. And the evidence was close. So Mr. Rush should get a new trial in this case. If your honors have no other questions. Okay, thank you. Mr. Talley. If I may please the court, my name is Sam Shem on behalf of the people. When you get down to it, your honors have correctly There is no connection between you and the witness in this case who has a similar name. No. Okay. When you get down to it, your honors have correctly identified the issue or at least correctly characterized the defendant's argument before this court. And that is, you're being asked to once again review the issue of Ginger Alton's competence. And your honor has already decided that issue on the first issue. When you look at the correct issue before this court as far as the first issue is concerned She says she's not talking about competence, she's talking about credibility. Well, they want to slap on the label of impeachment, credibility, but when you're considering the first issue, you have to look at what the statute provides. And you have to look at whether or not it was material, probative, trustworthy, was it admitted properly in the interest of justice, and was the defendant afforded an opportunity for cross-examination. And all of those factors were met in this case. And a defendant cannot come before this court and establish that the trial court in admitting Ginger Alton's prior testimony from the first trial abused its discretion in admitting. The label of the psychiatric issues vis-a-vis the impeachment or credibility of Ginger Alton is dealt with in the third issue. And defendant cannot cite to you a case or statute in Illinois that says that when you have a schizoaffective disorder that they are entitled to present the symptoms of that disease and then argue before the jury that that deals with her credibility issues. The one case that they cite to, and that is Mays, 5th District I believe, you had an informant in a drug case that testified against the defendant. And when the defense counsel asked him a question on cross-examination about his attempt at hanging himself, he testified that that was just a stunt. Now in rebuttal, defense counsel attempted to call his cellmate, Mr. Hooker, and a jail guard, Mr. Barretts, to rebut that particular testimony and to say that the trial court did not allow that. Now in appeal, the court ultimately, and it's important to note, and your Honor should, I'm sure your Honors have already noted that, when you look at that Mays decision, there is not a single case law or statute that was cited by that appellate court in deciding that case. But be as it may, the court said in light of the fact that the informant in that case admitted that he had attempted to commit suicide in hopes of getting to talk to a judge, in light of the fact that his prior conviction and the very fact that he was an informant all went to the central issue of credibility and that that should have been presented to the jury. It had nothing to do with psychiatric issues of that informant, mental health of that informant. So there is no basis for the defendant's argument before this court that they should have been allowed to present, by way of Dr. Schimel, the symptoms of schizoaffective disorder and then argue to the jury that that affects Ginger Altman's credibility. But having said that though, when you look at the record, the trial court in this case allowed Dr. Schimel to testify as to the medication, the effects those medications would have on Ginger Altman, and actually expressly characterized it as affecting her credibility. And Dr. Schimel was able to testify to all of those. And defense counsel got up in closing argument and talked about that issue. So at the end of the day... Was it explained what schizoaffective disorder was or schizophrenia? Was that included in his testimony? He said that the jury knew... He testified that he had diagnosed her with schizoaffective disorder among other things. She had a thyroid condition for which she was taking medication, was taking Haldol and Depakote, one of which was meant to control her seizures. And then he did testify that vis-a-vis the schizoaffective disorder, that she is prone to have delusions. There was an objection interposed by the prosecution. There was a sidebar. After the sidebar, the court struck that testimony and instructed the jury to disregard it. So, having said that though, because the defendant could not, at trial level, establish the relevance of the symptoms of those psychiatric conditions vis-a-vis her credibility, the trial court said, you cannot bring that out, but I will allow you to testify as to the effects.  And also, Your Honor, has to consider, although this court, in the first appeal, characterized the evidence as close, I think it was markedly different during the second trial. What we had during the second trial that was not presented during the first trial was defendant's confession that was made to ASA C.M. Black, the felony review prosecutor, wherein he admitted that he went fishing at Marquette Park with Ginger, his girlfriend, sat there and fished with the victim, drinking alcohol. Why wasn't that confession admitted in the first trial? I have no idea, Your Honor. But it was admitted during the second trial. And he admitted to beating the victim after he was dunked in the water. And, most notably, he testified, or he stated to ASA Black, that he took the fishing poles because he thought the victim deserved to be rocked. That is a damning evidence that was presented during the second trial. So even if Your Honor were to hold that the preclusion of that psychiatric evidence was there, ultimately, it was harmless. So for those reasons, and the reasons stated in our brief, the people respectfully request that the court affirm the defendant's conviction and the sentence imposed for that conviction. Thank you. I do have a quick question regarding the doctor that testified. Was his attempt to describe what she may have been going through and taking into account, as well, the events post-trial, her delusions or whatever that she was undergoing after trial, and eventually her death? And the question I have is whether, under the case that you cite, the Fifth District case, those events occurred pre-trial. And, of course, you have a right to present what occurs that might affect the individual's testimony at trial. But to the extent that events occur after trial, I find it a bit unusual that you would be able to elicit information that, or events that occur after trial to shed light on credibility days before. Right. And I wonder if there's any authority for that. There's no basis for that. And that is why the trial court properly excluded that evidence. But he did allow Dr. Schimel to testify as to his care of Ginger Altman, the medications that he had prescribed for her and her conditions, and the effects those medications had on her. Defense could not establish a relevant nexus between what happened two days after trial and what she testified to at trial. Thank you. Thank you, counsel. Rebuttal? You want to address that last issue? Yes. Again, the critical portions of impeachment involve the things that happened at the pre-trial statement and around trial. However, this is a very unique case and probably why there isn't any case on point. But the defense does have the right to impeach on any relevant evidence. And because this is a mental illness and she was prescribed this really strong tranquilizer right after her testimony, she was ill on the day she testified. Do you think that the testifying itself might have been a triggering event that had nothing to do with what she testified? It's a possibility. It's also a possibility that because she indicated that she was ill the day before she testified and didn't want to come to court but was threatened with a contempt citation. So this was kind of an ongoing thing around trial. That the tranquilizer was administered after the trial? I don't know when it was administered. We only know that she died of a reaction to it. You just said that the tranquilizer was administered after the trial. This really strong tranquilizer was administered after trial. We don't know exactly when it was administered. So the question is that if that is so, then what relevance is it because that strong tranquilizer apparently was what precipitated her into beating her head on the floor and rolling around the room, as I understand the evidence. And so if that wasn't impacting her at the time of trial, why is it relevant? Again, it's our contention that her ongoing downward spiral started the day before she testified. So she was having these mental illness problems surrounding her testimony. Again, though, there were other things that didn't come in that the defense attorney was not allowed to impeach her with that we think are closer in the time of trial and to the time that she gave her pretrial statement where the most damaging evidence came in. So it's not just the impeachment with what happened on the day she died. That's just part of our argument. Again, this is a unique situation where the jury didn't get to see her and the symptoms of her illness, which the jury was not allowed to hear, directly relate to things like delusions where a person might not be able to recall something or testify properly and the defense attorney was not allowed to question the doctor about the symptoms of her mental illness. And it's relevant because she was unmedicated when she gave her pretrial statement. So she could have been having delusions when she gave that statement. And that's something the jury should have heard. And again, with regard to harmless error, the defendant's statement, apparently the state didn't put a lot of credence into it because they didn't introduce it at the first trial I do have one observation. In terms of what the doctor would have testified to had those additional questions been asked, there was no voir dire of the witness outside the presence of the jury to allow a record to be established so that the court of review would know what testimony had been excluded. The only thing we know is that when he started to answer the question, he talked about delusions. If there are no further questions, we request a remandment for a new trial. Thank you very much.